# UNITED STATES COURT OF APPEALS
## Tenth Circuit
### Byron White United States Courthouse
### 1823 Stout Street
### Denver, Colorado 80294
### (303) 844-3157

Patrick J. Fisher, Jr.                                               Elisabeth A. Shumaker
Clerk                                                               Chief Deputy Clerk

July 30, 1996


**TO:** ALL RECIPIENTS OF THE CAPTIONED OPINION

**RE:** 95-8046 Kieffer v. Weston
    July 23, 1996 by The Honorable James K. Logan


Please be advised of the following correction to the captioned decision:

On page one in the second line of attorney listings, Constello is misspelled. The correct spelling is Costello.

Additionally, the two-sided copies mailed by the court did not contain the even numbered pages. Enclosed is a complete copy for those who received two-sided copies. If your copy was complete, please disregard.

Please make the appropriate correction to your copy.

Very truly yours,

Patrick Fisher, Clerk



Beth Morris
Deputy Clerk

# UNITED STATES COURT OF APPEALS
## Tenth Circuit
### Byron White United States Courthouse
### 1823 Stout Street
### Denver, Colorado 80294
### (303) 844-3157

Patrick J. Fisher, Jr.                                                                     Elisabeth A. Shumaker
Clerk                                                                                         Chief Deputy Clerk

### July 24, 1996

TO: ALL RECIPIENTS OF THE CAPTIONED OPINION

RE: 95-8046 Kieffer v. Weston
     July 23, 1996 by The Honorable James K. Logan


     Please be advised of the following correction to the captioned decision:

     The original opinion was not file stamped and does not reflect the filing date. The date of filing is July 23, 1996.

     Please make the appropriate correction to your copy.

                  Very truly yours,

                  Patrick Fisher, Clerk


                  Beth Morris
                  Deputy Clerk

**UNITED STATES COURT OF APPEALS**

**Filed 7/23/96**

**TENTH CIRCUIT**

---

RICHARD KIEFFER, )
)
   Plaintiff-Appellee, )
)
v. ) No. 95-8046
)
WESTON LAND, INC., a Wyoming )
corporation, )
)
   Defendant/Third Party Plaintiff- )
   Appellant, )
)
v. )
)
COCA-COLA WEST, INC., )
)
   Third Party Defendant. )

---

Appeal from the United States District Court
for the District of Wyoming
(D.C. No. 94-CV-152)

---

Patrick Frank Crow of Whitley & Crow, Newcastle, Wyoming (Donald A. Porter of Costello, Porter, Hill, Heisterkamp & Bushnell, Rapid City, South Dakota, with him on the briefs), for Defendant-Appellant Weston Land, Inc.

Robert R. Rose, III of Rose, Rose & O'Donnell, Cheyenne, Wyoming, for Plaintiff-Appellee.

Before **BALDOCK, LOGAN** and **BRISCOE**, Circuit Judges.

_____

**LOGAN**, Circuit Judge.

_____

Plaintiff Richard Kieffer brought this diversity action seeking damages for injuries he suffered when he received an electrical shock from a vending machine at a restaurant owned by defendant, Weston Land, Inc.[1]  A jury found in favor of plaintiff and awarded him $50,000.  On appeal defendant argues that the district court erred in (1) allowing plaintiff's electrical expert to testify to an opinion based on speculation and (2) instructing the jury on the doctrine of res ipsa loquitur.

I

Plaintiff worked a delivery route for Metz Baking Company.  In May 1992, he was delivering goods to the Fountain Inn, defendant's restaurant.  Defendant's employee asked him to remove some bakery trays from the basement.  Plaintiff carried the trays to the top of the basement stairs where he encountered a narrow opening between two soft drink vending machines.  On his left side was a Coca-Cola machine owned and serviced

_____

[1]  Weston Land filed a third party complaint against Coca-Cola West, Inc., asserting that the vending machine was negligently maintained and serviced by Coca-Cola West, and therefore defendant Weston Land was entitled to indemnification or contribution.  The jury found for Coca-Cola West on the third party complaint, and it is not a party to this appeal.

2

by Coca-Cola. On his right side was a Seven-Up machine (sometimes referred to in the record as a Pepsi machine because it was used to store Pepsi) owned by defendant. Plaintiff lifted the trays at an angle above his head so that he could pass between the machines. His right wrist touched the top of the Seven-Up machine and his left shoulder touched the Coca-Cola machine.

Plaintiff testified that he received a massive electric shock from the Seven-Up machine, causing a broken left shoulder and a burn on his right wrist.[2] Plaintiff's physician testified that in his professional opinion plaintiff's avulsive fracture of the humerus could have been caused by a fall, but most likely was caused by a violent muscular contraction triggered by a seizure or electrical shock.

An employee of defendant checked both the Seven-Up and the Coke machines later in that same day to see whether they might be producing shocks. He testified that neither machine had any electric current flowing that could cause a shock, and that both machines were grounded. A few days later defendant removed the Seven-Up machine and discarded it at a dump site on its property, replacing it with a candy machine. The Seven-Up machine apparently remained at the dump site for approximately a year; defendant then retrieved and stored the machine because of this litigation.

---

[2] Although defendant argued at trial and in his briefs that plaintiff was not shocked, plaintiff produced enough evidence for a jury to find that he was indeed shocked and received the shoulder injury as well as the burn on his right wrist because of the shock.

Plaintiff presented testimony of an electrical engineer, Dr. Thomas Oliver, who examined the Seven-Up machine after it was recovered from the dump. Oliver found that the plug from the machine's power cord was no longer attached and was not available. He testified that if the wrong type of plug had been attached to the cord or if the proper plug was improperly attached, the Seven-Up machine could have produced an electric shock sufficient to cause plaintiff's injuries. He also testified that if the Seven-Up machine had created an electric shock when plaintiff contacted it while simultaneously touching the Coca-Cola machine, the current would have flowed from the Seven-Up machine to the Coca-Cola machine. He further stated that a burn generally occurs at the point of contact with the electrically charged machine. Without the original plug Oliver could not render an opinion about whether the Seven-Up machine was defective on the date of plaintiff's injury. Oliver did not test the Coca-Cola machine.[3]

II

Defendant first argues that Dr. Oliver's testimony was speculative and therefore his opinion should not have been admitted. "[T]he district court has broad discretion in determining whether or not to admit expert testimony, and we review a decision to admit or deny such testimony only for abuse of discretion." Orth v. Emerson Elec. Co., White-

---

[3] Although plaintiff notes in his brief that a Weston employee tested the Coca-Cola machine after the accident and found it to be operating properly, we note that the same employee also tested the Seven-Up machine after the accident and found it to be operating properly.

4

Rodgers Div., 980 F.2d 632, 637 (10th Cir. 1992). Under Daubert v. Merrill Dow

Pharmaceuticals, Inc., 509 U.S. 579, 592 (1993), the district court must make a pretrial

evaluation on the admissibility of scientific expert opinions. An expert opinion must be

based on facts that enable the expert "to express a reasonably accurate conclusion as

opposed to conjecture or speculation [but] absolute certainty is not required." Jones v.

Otis Elevator Co., 861 F.2d 655, 662 (11th Cir. 1988) (citations omitted); see also

Robinson v. Missouri Pac. R.R. Co., 16 F.3d 1083, 1089-90 (10th Cir. 1994) (when

expert's opinion had some basis in fact, jury could determine whether testimony was

helpful).

Defendant argues that Oliver assumed that defendant's machine caused the shock

and based this on yet another assumption, i.e., that the Coca-Cola machine (which the

expert did not examine) was not the machine which caused the shock. Defendant also

points out that in order to explain the shock Oliver had to assume either that the Seven-Up

machine had been wired incorrectly with a two-prong plug or improperly wired with a

three-prong plug. Defendant contends that Oliver's testimony thus was based on

conjecture and not facts. Plaintiff counters that Oliver never offered an opinion as to

whether the Seven-Up machine was in fact defective, he only theorized circumstances

under which the Seven-Up machine could have caused the shock. Plaintiff also points out

that Oliver acknowledged he was unable to formulate an opinion on the ultimate issue in

dispute because of the missing plug.

5

The factual basis for Oliver's expert opinion was not so lacking as to render it unreliable. Plaintiff testified that he received a burn where he touched the Seven-Up machine. Although defendant's employee immediately checked both machines and found nothing wrong, defendant soon removed the Seven-Up machine to a dump. When it was retrieved a year later it was without a plug. The district court stated that

> [o]bviously, had the plug not been removed from the machine, Dr. Oliver's conclusions regarding the likelihood of shock in relation to a defective plug would have been either far more certain or possibly even unnecessary. The fact remains, however, that the missing evidence which created the need for the testimony which Weston now finds objectionable was caused by Weston itself.

Appellee's Supp. App. 260.

Defendant argues that the loss of evidence by a party does not allow a negative inference against that party unless it is shown that it acted in bad faith, citing Mason v. E.L. Murphy Trucking Co., Inc., 769 F. Supp. 341, 345 (D. Kan. 1991) and Lewy v. Remington Arms Co., Inc., 836 F.2d 1104 (8th Cir. 1988). But Mason involved a request for sanctions and Remington dealt with the propriety of a general negative inference instruction. Plaintiff was entitled to produce the relevant evidence that defendant removed the machine a few days after the incident and that when defendant produced it over a year later the plug was gone. Defendant offered an explanation for the missing plug, suggesting it was caught in the truck bed when the machine was taken to the dump, but the jury had the right to reject that explanation.

6

The evidence provided a factual basis for Oliver's testimony about how an electric shock might have occurred. The district court correctly ruled that the jury was free to accept or reject the expert's opinion in deciding, based on the proof provided by plaintiff, whether defendant's Seven-Up machine was the source of his injury.

## III

Defendant next argues that the jury should not have been instructed on the doctrine of res ipsa loquitur. The question of the substance of a jury instruction in a diversity case is controlled by state law although the grant or denial of the instruction is a matter of federal procedure. Perlmutter v. United States Gypsum Co., 4 F.3d 864, 871-72 (10th Cir. 1993).

Under Wyoming law, the doctrine of res ipsa loquitur allows the trier of fact to infer negligence by the defendant from circumstantial evidence when the plaintiff cannot establish a specific act of negligence. See, e.g., Dellapenta v. Dellapenta, 838 P.2d 1153, 1164 (Wyo. 1992); Goedert v. Newcastle Equip. Co., 802 P.2d 157, 158 (Wyo. 1990). The plaintiff is entitled to a jury instruction on res ipsa loquitur if he produces sufficient evidence to allow the jury to find the following three requirements:

> (1) The apparatus [causing the damage] must be such that in the ordinary instance no injurious operation is to be expected unless from a careless construction, inspection, or user; (2) Both inspection and user must have been at the time of the injury in the control of the party charged; (3) The injurious occurrence or condition must have happened irrespective of any voluntary action at the time by the party injured.

7

Stanolind Oil & Gas Co. v. Bunce, 62 P.2d 1297, 1301-02 (Wyo. 1936). Defendant does not seriously contest the third prerequisite--that plaintiff was not responsible for the injury--although at trial it argued that plaintiff was not shocked but rather fell. But defendant contends that plaintiff failed to produce sufficient evidence of the first two prerequisites.

A

Defendant argues that the thing which caused the harm is in dispute and that res ipsa may only be invoked when the thing that caused harm is not in dispute. See York v. North Cent. Gas Co., 237 P.2d 845, 851 (Wyo. 1951) (plaintiffs ruled out other sources of fire; thus res ipsa instruction was proper). Defendant asserts that plaintiff did not rule out the Coke machine as a source of the shock.

The record reveals, however, that plaintiff presented evidence negating the other potential causes of the shock. Plaintiff felt the shock from the Seven-Up machine and received a burn on his right wrist where he touched it. His electrical expert testified that one would most likely receive a shock at the point of contact with the shock source. Finally, the missing plug permits the inference that the Seven-Up machine, rather than the Coke machine, caused the shock. In Western Fire Ins. Co. v. Tim Force Tin Shop, Inc., 599 P.2d 540 (Wyo. 1979), relied on by defendant, a res ipsa instruction was not justified because the plaintiffs failed to establish by a preponderance of the evidence that the instrumentality that caused a fire was defendant's heater. In the instant case there was

8

substantial, although contested, evidence that the Seven-Up machine caused the shock, creating a jury question. See id. at 547.

In a related argument, defendant notes that res ipsa loquitur "is not to be applied where the circumstances warrant an inference that the injury or damage did not result from the negligence of the defendant," particularly if "other causes for the [injury] could be inferred." Wood v. Geis Trucking Co., 639 P.2d 903, 906-07 (Wyo. 1982). Defendant argues that assuming the Seven-Up machine shocked plaintiff, the problem with the machine was not necessarily caused by defendant's negligence. It contends the machine could have contained a manufacturing defect, or could have been negligently repaired by a Coca-Cola West employee. But the record contains substantial evidence tending to eliminate other likely causes. Plaintiff expert's testimony that there were no defects in the Seven-Up machine itself, coupled with the missing plug, point away from a manufacturing defect. Further, there was no evidence that any Cola-Cola West employee ever performed work on the Seven-Up machine that could have affected the machine's electrical system.

## B

Defendant asserts plaintiff failed to establish the second prerequisite, that the instrumentality causing the injury was in defendant's control. Defendant again cites evidence that Coca-Cola West may have provided some service on the machine, and thus defendant was not in exclusive control, relying on Stanolind Oil & Gas, 62 P.2d at 1303.

In Stanolind, the plaintiff was injured while lighting a gas hot water heater in a dormitory owned and maintained by that defendant. The plaintiff turned off a valve, turned it back on, and when he attempted to light the heater there was an explosion. In determining whether res ipsa loquitur applied, the court first noted the rationale for the "exclusive control" requirement: if the defendant had control of an instrumentality that caused harm, the plaintiff usually could not prove the particular negligence involved. In contrast, the defendant would be in a superior position to explain the circumstances "which made such agency act as it ordinarily should not," and thus the res ipsa burden shifting would be appropriate. Id. at 1308. The Stanolind court concluded that the defendant did not have exclusive control of the hot water heater and thus did not have superior knowledge to explain the occurrence; therefore the doctrine of res ipsa could not be invoked. In contrast, plaintiff here had no control of the Seven-Up machine at the time of the accident; even if Coca-Cola had at some past time worked on the machine it was in the exclusive possession of defendant when the accident occurred. Certainly defendant was in the superior position to produce evidence that it was not negligent.

The district court did not err in finding that plaintiff presented sufficient evidence of the three prerequisites to support the res ipsa loquitur instruction. Plaintiff produced evidence that the Seven-Up machine shocked him and that in the ordinary course of events a vending machine does not shock in the absence of negligence. Plaintiff intro-duced evidence on which the jury could find that defendant was in control of the machine

10

and possessed superior knowledge to explain the problem. Finally, the evidence demon-strated that plaintiff was not the cause of the injury. The district court properly instructed on <u>res ipsa loquitur</u>, shifting the burden to defendant to produce evidence that it was not negligent.

AFFIRMED.