F I L E D
**United States Court of Appeals
Tenth Circuit**

**APR 7 1999**

**PATRICK FISHER**
**Clerk**

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

MAE ENFIELD, conservator and
natural mother of JERRY ALLEN
ENFIELD,

     Plaintiff-Appellee,

vs.

A.B. CHANCE COMPANY and
EMERSON ELECTRIC COMPANY,

     Defendants-Appellants.

--------------------

CITY OF GOODLAND, KANSAS,

     Intervenor.

No. 97-3377
(D.C. No. 94-CV-1423)
(D. Kan.)

## ORDER AND JUDGMENT[*]

Before **KELLY**, **MCKAY**, and **LUCERO**, Circuit Judges.

Plaintiff-appellee Jerry Allen Enfield was injured in 1992 by a utility pole

that broke and fell on him while it was being removed from the ground.  The

injury occurred when the boom of a Pitman Polecat digger-derrick ("Polecat"),

---

[*] This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel.  This court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

manufactured by Defendant-appellant A.B. Chance, collapsed while removing the pole from the ground. The boom was fastened to the mainframe of the Polecat with twenty-four bolts. These bolts broke, causing the boom to separate from the mainframe. The weight of the collapsing boom snapped the pole, causing it to fall on Mr. Enfield. Mr. Enfield brought this personal injury products liability diversity action based on Kansas law in September of 1994. A jury found A.B. Chance fifty-percent responsible for Mr. Enfield's injuries, and final judgment was entered against it in the amount of $1,733,002 with interest. A.B. Chance appeals from the judgment and claims that the district court erred by: (1) admitting proof of other accidents; (2) admitting evidence of subsequent use of the Polecat; and (3) improperly instructing the jury. The parties are familiar with the facts, and we discuss them further only as necessary to resolve the issues on appeal. Our jurisdiction arises under 28 U.S.C. § 1291, and we affirm.

## A. Evidentiary Challenges

A.B. Chance alleges that the district court committed the following errors in admitting proof of other accidents: (1) failing to require evidence that the other accidents were substantially similar before admitting them; (2) admitting evidence of other accidents through Defendant's expert witness contrary to the requirements of Fed. R. Evid. 703; and (3) admitting a Product Liability Task

Force Report without finding substantial similarity of the accidents discussed in the report and without properly conducting a Fed. R. Evid. 401 and 403 analysis. In addition, A.B. Chance contends that the district court committed the following errors in refusing to admit evidence regarding the Intervenor City of Goodland's ("the City") subsequent use of a pole puller:  (1) misapplying Fed. R. Evid. 407 to the admission of the evidence; (2) misapplying Rule 407 to rebut the City's claim that using a pole puller was not feasible; (3) misapplying Rule 407 because the purpose of the rule is to protect potential defendants, not third parties like the City.  We do not overturn a district court's decision to admit or exclude evidence absent an abuse of discretion, see McCue v. Kansas, 1999 WL 5064, at *3 (10th Cir. 1999), and then, only if a substantial right of a party is affected.  See Fed. R. Evid. 103; Coletti v. Cudd Pressure Control, 165 F.3d 767, 776 (10th Cir. 1999); Gomez v. Martin Marietta Corp., 50 F.3d 1511, 1518 (10th Cir. 1995).

1. Proof of Other Accidents

Evidence of other accidents in a product liability case may be admitted to show notice or defect, provided that the party offering the evidence demonstrates that "the circumstances surrounding the other accidents were substantially similar to the accident involved in the present case."  Wheeler v. John Deere Co., 862 F.2d 1404, 1407 (10th Cir. 1988).  Whether accidents are substantially similar

depends, in part, upon the theory of the case. See id.; Ponder v. Warren Tool Corp., 834 F.2d 1553, 1560 (10th Cir. 1987). However, the accidents need only be substantially similar, not exactly the same; the differences between the accidents not affecting their substantial similarity go to the weight of the evidence, not to its admissibility. See Wheeler, 862 F.2d at 1408.

Here, the district court found that the six accidents were relevant and substantially similar to the accident at issue after receiving briefs and hearing arguments with respect to the admission of this evidence. After reviewing the record, we find that the district court did not abuse its discretion in its ruling. All six accidents occurred prior to Mr. Enfield's accident, and all involved the same component parts. See VI R. at 1884. Although the accidents did not occur in exactly the same manner as Mr. Enfield's accident, precise similarity is not required.

A.B. Chance relies on this court's holding in Julander v. Ford Motor Co., 488 F.2d 839 (10th Cir. 1973), to support its argument that the court cannot admit evidence of the other accidents when the admission is based solely on similar component parts. However, the court in Julander excluded the evidence because there was no proof that the accidents occurred prior to the accident at issue and, thus, evidence of the accidents was not justified to prove notice. See id. at 846. While the Julander court could not determine "whether the precise problem

encountered by the seven complainants was the same as that claimed to have been encountered by [the plaintiff]," the court's holding did not rely on the lack of similarity of the problems. Id.

In this case, all six accidents occurred prior to Mr. Enfield's accident; three occurred prior to the 1981 manufacture of the Polecat at issue, and three occurred after. See VI R. at 1884. A.B. Chance contends that evidence of the three accidents that occurred after the 1981 manufacture date should not have been admitted because Mr. Enfield did not allege that A.B. Chance had any post-manufacture obligations. Plaintiff presented evidence of the six similar accidents in his case-in-chief. At the end of Plaintiff's case in chief, the district court dismissed Plaintiff's warning and warranty claims. See II R. at 631-32. At this point, A.B. Chance failed to request a limiting instruction regarding the three accidents that occurred after 1981. These dismissed claims did involve some post-manufacture, pre-accident obligations on A.B. Chance's part. Therefore, the district court did not abuse its discretion in admitting both the pre- and post-manufacture accidents.

A.B. Chance also contends that the district court erred in admitting evidence of these other accidents through Mr. Enfield's expert witness, contrary to the requirements of Fed. R. Evid. 703. This contention is without merit. The court had already ruled the evidence of the prior accidents admissible as relevant

evidence. Thus, Rule 703 does not apply because the expert's opinion was based on admissible evidence, not "otherwise *inadmissible hearsay*." Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 595 (1993) (emphasis added). Therefore, admission of the evidence was not improper, and the district court did not abuse its discretion in allowing the expert to rely on the accidents already found to be substantially similar to the accident at issue.

The trial court admitted a redacted version of A.B. Chance's internal Product Liability Task Force Report, finding that it was relevant to show notice of prior accidents. See II R. at 383-86. A.B. Chance argues that the trial court erred in admitting the Report without finding substantial similarity of the accidents and without properly weighing the evidence under Fed. R. Evid. 401 and 403. We find that the district court did not abuse its discretion in admitting the Report. First, the court reviewed the entire Report and only permitted Plaintiff to use the portions it determined to be relevant. See II R. at 383-86; see also Fed. R. Evid. 401. Second, the record reflects only a general relevance objection and shows that the district court carefully considered Rule 403 factors in determining which portions of the Report to admit. See II R. at 383-86. The court's determination that the Report had probative value was clearly not an abuse of discretion. Likewise, the trial court carefully considered the question of similarity and concluded that, in fact, the accidents were of a similar nature. We fail to see an

abuse of discretion as argued.

## 2. Evidence of the City's Subsequent Use of a Pole Puller

A.B. Chance argues that the district court erred by refusing to admit evidence that, after Mr. Enfield's accident, the City began using a pole puller in compliance with A.B. Chance's operating manuals. A.B. Chance argues that the district court improperly excluded the evidence based on Fed. R. Evid. 407, instead of Kansas law. Because A.B. Chance failed to raise the application of Kansas law to the district court, we will not consider the issue for the first time on appeal. See Tele-Communications, Inc. v. Commissioner, 12 F.3d 1005, 1007 (10th Cir. 1993). A.B. Chance also contends that, given Rule 407, the court abused its discretion in refusing to admit the evidence. After carefully reviewing all of A.B. Chance's arguments and the record, we find that the district court did not abuse its discretion in declining to admit evidence on the City's subsequent use of a pole puller.

## B. Jury Instructions

A.B. Chance alleges that the district court committed the following errors in instructing the jury: (1) instructing the jury that a manufacturer has a "strict duty of care" which improperly states Kansas law and misled the jury; (2)

instructing the jury that evidence of a later-issued standard was irrelevant; (3) declining to include A.B. Chance's proposed jury instruction on substantial change or alteration to the polecat by the City. In a diversity case, the determination of the substance of a jury instruction is a matter of state law, but the grant or denial of an instruction is a procedural matter controlled by federal law. See Dillard & Sons Constr., Inc. v. Burnup & Sims Comtec, Inc., 51 F.3d 910, 915 (10th Cir. 1995). We review de novo whether the district court's instructions, considered as a whole, properly stated the applicable law and focused the jury on the relevant inquiry. Medlock v. Ortho Biotech, Inc., 164 F.3d 545, 552 (10th Cir. 1999). "The instructions need not be entirely free from fault, but they may not serve to mislead the jury in any way." Dillard & Sons Constr., Inc., 51 F.3d at 915.

1. Strict Duty of Care Instruction

A.B. Chance contends that the district court erred in instructing the jury that a manufacturer has a "strict duty of care" because the instruction improperly states Kansas law. However, this court has previously found that Kansas strict liability law includes such a duty and has upheld similar jury instructions. See Wheeler, 862 F.2d at 1412; Prince v. Leesona Corp., 720 F.2d 1166, 1171 n.9 (10th Cir. 1983); Hardin v. Manitowoc-Forsythe Corp., 691 F.2d 449, 455 (10th

Cir. 1982).  Under the principles of *stare decisis*, we must abide by these

holdings. See United States v. Brooks, 161 F.3d 1240, 1247 (10th Cir. 1998).  In

light of this court's previous holdings and after analyzing the instruction as a

whole, we find that this instruction adequately reflects Kansas law.


2. Later-Issued Standard Instruction

A.B. Chance argues that the district court erred in including the following

instruction:

> Proof of compliance with a standard that was in effect at the time of manufacture is not a defense to a charge of negligence unless such practice is consistent with standards or ordinary care.  For example, a manufacturer's compliance with a standard that was in effect at the time of manufacture is not dispositive under Kansas law if it is shown that a reasonable manufacturer would have done more.
> A standard that was issued and became effective after the date of manufacture is not relevant and should not be considered by you on the question of whether defendant exercised ordinary care.

IV R. at 1461.  In particular, A.B. Chance objects to the last sentence of the

instruction.  After considering the instruction as a whole, we conclude that it is

consistent with Kansas law and the district court did not err in giving it to the

jury.  See Rexrode v. American Laundry Press Co., 674 F.2d 826, 832 (10th Cir.

1982) (finding, in a Kansas product liability case, standard that became effective

after the product's manufacture date to be "at best remote.").

3. Refusal to Include A.B. Chance's Instruction

Finally, A.B. Chance asserts that the district court erred by refusing to include its proposed instruction on substantial change or alteration. The proposed instruction reads:

> A manufacturer is not liable when the cause of an accident was a substantial change or alteration in the product. A substantial change or alteration means that the configuration or operational characteristics of the product are changed or altered by affirmative conduct of some person in a manner that the defendant could not reasonably have foreseen would occur in the intended or foreseeable use of the product.

IV R. at 1347. A.B. Chance claims that the court's failure to include the instruction left the jury with "the impression that substantial alteration was merely a factor to consider in assessing comparative fault, rather than being a bar to any liability on the part of A.B. Chance." Aplt. Br. at 47-48. Again, we review the court's instructions "as a whole to determine whether they properly stated the applicable law and provided an ample understanding of the applicable standards." Dillard & Sons Contruction, Inc., 51 F.3d at 915.

Under Kansas law, a manufacturer may not be held liable for a product's defective design where, after the product leaves the manufacturer's possession or control, there is an unforeseeable substantial modification to the product, and the accident would not have occurred but for the substantial modification. See Howard v. TMW Enterprises, Inc., 1998 WL 918320, at *6 (D. Kan. 1998);

- 10 -

Mason v. E.L. Murphy Trucking Co., 769 F. Supp. 341, 345 (D. Kan. 1991).

Thus, we must determine whether the court's instructions as a whole allowed the jury to consider this defense.

The charge given, considered as a whole, defines alteration in such a manner as to allow the jury to draw the inference sought by the rejected instruction. It is apparent that the district court regarded the alteration defense as going to the general issue in the case and instructed the jury that there is no liability if the product was not defective or substantially altered. See IV R. at 1462, 1464-65. The issue is not whether the instructions are faultless in every particular, and while it would have been preferable to give A.B. Chance's proposed instruction, the instructions given to the jury allowed it to consider alteration as a bar to liability. Such a theory was argued. See III R. at 1198, 1203, 1208-09. In these circumstances, we decline to find reversible error.

AFFIRMED.

Entered for the Court


Paul J. Kelly, Jr.
Circuit Judge